IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ROCKEFELLER F. COOPER, II,

          Plaintiff,

    v.

GEORGIA GWINNETT COLLEGE,

          Defendant.

CIVIL ACTION FILE NO.

1:16-CV-01177-TWT-JFK

## NON-FINAL REPORT AND RECOMMENDATION

Plaintiff Rockefeller F. Cooper, II, filed the above-styled employment discrimination action against Defendant Georgia Gwinnett College on April 13, 2016. [Doc. 3 ("Complaint")]. In his complaint, Plaintiff asserts federal claims of gender discrimination based on Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, *et seq.*, and on Title IX, 20 U.S.C. § 1681 ("Title IX"). [Id.]. Although not identified as causes of action in the Complaint, Plaintiff also contends that he is bringing procedural due process claims pursuant to the Fifth and Fourteenth Amendments to the United States Constitution based on the handling of his employment termination. [Docs. 5 and 10]. As discussed *infra*, to the extent that Plaintiff is asserting procedural due process claims, they are brought pursuant to 42 U.S.C. § 1983. Defendant Georgia Gwinnett College ("GGC"), through the Board of

Regents of the University System of Georgia ("BOR"), has moved to dismiss the claims pursuant to Fed. R. Civ. P. 12(b)(6). [Doc. 8]. Plaintiff responded opposing the motion to dismiss [Doc. 10], and Defendant filed a reply in support of the motion [Doc. 11].

## I.   Facts

On a motion to dismiss under Rule 12(b)(6), the complaint's factual allegations are assumed true and construed in the light most favorable to the plaintiff.  Hardy v. Regions Mortg., Inc., 449 F.3d 1357, 1359 (11th Cir. 2006); M.T.V. v. DeKalb County Sch. Dist., 446 F.3d 1153, 1156 (11th Cir. 2006).  "However, conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal."  Oxford Asset Mgmt., Ltd. v. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002) (citations omitted).  Accordingly, the following factual allegations are drawn from the Complaint.

Plaintiff, a former instructor at GGC, asserts that on October 7, 2015, he was advised that he was being suspended pending an investigation of alleged Title IX violations based on complaints by female students.  On October 13, 2015, instead of meeting with an investigative panel, Plaintiff met with a female, Ms. Jana Anandarangam, regarding the complaints.  A second female was present to take notes.

2

[Complaint ¶¶ 1, 14].  Ms. Anandarangam advised Plaintiff that two female students
had accused him of inappropriate behavior, including touching, in the classroom.  [Id.
¶ 14].  Plaintiff was also advised that he was accused of "(1) making the classroom
uncomfortable for female students as it relates to a learning environment[,] (2) [u]sing
sexual innuendos and sexual references in the classroom[,] (3) [i]nappropriately
touching several female students without consent for class demonstration[, and] (4)
[i]ntimidating students into not reporting . . . [his] behavior to the authorities."  [Id.].
Plaintiff denied the allegations and, when asked, explained that several students -
including those filing the complaints - "had a problem with [him] not rounding off
their mid-term grades; an act which prevented a lot of 'raw scores' from being elevated
to a higher grading bracket."  [Id.].  This complaint about grading could have resulted
in retaliation by the students.  [Id.].

　　　　Plaintiff explained why he thought he was discriminated against based on his
sex, male.  Plaintiff alleged that he was teaching an Anatomy and Physiology course
which involved complex issues and that he used "techniques" to "help simplify a lot
of concepts" including "standarized mnemonics such as Some Lovers Try Positions
That They Can't Handle" or "Californians Like Girls In String Bikinis . . . ."  These
"methodologies that are also used by female instructors" were "taken and considered

3

to be sexually related . . . ."  [Id.].   Plaintiff then alleges that, although Ms. Anandarangam stated that she did not understand why the allegations were made, she concluded that he was guilty and would be terminated.  Plaintiff asserts that this was discriminatory because a "single female" investigated "allegations of sexual harassment against a male instructor by students who were all females."  [Id.]. Plaintiff also alleges that one of the complaining female students, after his termination, advised Plaintiff "that at no point in time did she ever filed [sic] a complaint AGAINST" him. [Id.].  Plaintiff further alleges that the student informed him that she was summoned before the Office of Diversity and asked to verify the allegations against Plaintiff but the complaint does not allege how the student responded to that inquiry.  [Id.]. Plaintiff seeks a letter of apology and monetary damages in the amount of $100,000.  [Complaint, Request for Relief].

On February 24, 2016, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging that he was terminated on October 23, 2015, based on his sex in violation of Title VII.  [Complaint, Attachment].  After the Dismissal and Notice of Rights was issued on March 8, 2016 [Id.], Plaintiff filed the Complaint against GGC on April 13, 2016 [Doc. 3].

4

Additional facts will be set forth as necessary during discussion of the motion to dismiss.

## II.   Motion to Dismiss Standard

The Federal Rules of Civil Procedure include no requirement that a plaintiff detail the facts upon which the plaintiff bases a claim.  Rule 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (as amended 2007).  Accordingly, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of [her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007) (citations omitted); accord Financial Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282-83 (11th Cir. 2007) (recognizing that "while notice pleading may not require that the pleader allege a specific fact to cover every element or allege with precision each element of a claim, it is still necessary that a complaint contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory") (citations and internal quotation marks omitted).  "Factual allegations must be enough

5

to raise a right to relief above the speculative level," i.e., they must do more than merely create a "'suspicion [of] a legally cognizable right of action,' on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 127 S. Ct. at 1965 (citations omitted) (emphasis omitted). "Stated differently, the factual allegations in a complaint must 'possess enough heft' to set forth 'a plausible entitlement to relief[.]'" Stephens, 500 F.3d at 1282 (quoting Twombly, 127 S. Ct. at 1966-67). A plaintiff's complaint will be dismissed if it does not contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

The court's inquiry at this stage of the proceedings focuses on whether the challenged pleadings "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007) (citations and internal quotation marks omitted). And, a court reviewing a motion to dismiss must keep in mind that a "motion to dismiss for failure to state a claim upon which relief can be granted merely tests the sufficiency of the complaint; it does not decide the merits of the case." Wein v. American Huts, Inc., 313 F. Supp. 2d 1356,

1359 (S.D. Fla. 2004) (citing <u>Milburn v. United States</u>, 734 F.2d 762, 765 (11th Cir. 1984)).  "Regardless of the alleged facts, however, a court may dismiss a complaint on a dispositive issue of law."  <u>Bernard v. Calejo</u>, 17 F. Supp. 2d 1311, 1314 (S.D. Fla. 1998) (citing <u>Marshall County Bd. of Educ. v. Marshall County Gas Dist.</u>, 992 F.2d 1171, 1174 (11th Cir. 1993) ("[T]he court may dismiss a complaint . . . when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action.")); <u>see also</u> <u>Glover v. Liggett Group, Inc.</u>, 459 F.3d 1304, 1308 (11th Cir. 2006) (same); <u>Aque v. Home Depot U.S.A., Inc.</u>, 629 F. Supp. 2d 1336, 1350 (N.D. Ga. 2009).

The court will apply these standards in ruling on the motion to dismiss.

## III.  Discussion

### a.  Entity Subject to Suit

Defendant first asserts that Plaintiff has failed to name as a defendant a legal entity subject to suit and that BOR should be substituted as the named defendant in this case.  [Doc. 8 at 1 n.1].  Defendant is correct.  As stated in <u>Bd. of Regents of the Univ. System of Georgia v. Doe</u>, 278 Ga. App. 878, 630 S.E.2d 85 (2006), the Board of Regents "is a state agency that governs and manages the University System of Georgia and its member institutions[;]" those institutions are "not . . . separate or distinct legal

entit[ies] from the Board and, therefore, cannot sue or be sued . . . ." Id. at 878, 630 S.E.2d at 87; and see Schick v. Bd. of Regents of the Univ. System of Georgia, 334 Ga. App. 425, 425 n.1, 779 S.E.2d 452, 453 n.1 (2015) (noting that Georgia Perimeter College "is not a separate legal entity from the [BOR] and, accordingly, cannot sue or be sued"); Scully v. Bd. of Regents of the Univ. System of Georgia, 332 Ga. App. 873, 873 n.1, 775 S.E.2d 230, 231 n.1 (2015) ("State universities are not separate and distinct legal entities from the Board and, therefore, the University of Georgia cannot sue or be sued in its own capacity.").

Plaintiff objects[1] arguing that he was not hired by BOR and that BOR was not involved in the investigation of the sexual harassment allegations or in the decision to terminate his employment which, he contends, did not comply with procedural due process requirements. He apparently believes that substituting BOR will "serve as an act to cover up a legal flaw." [Doc. 10 at 2]. However, substituting BOR as the legal entity subject to the lawsuit will not impact this litigation in any substantive manner. As Defendant notes, if Plaintiff refuses to continue the lawsuit against BOR, then his

---

[1]Plaintiff has also filed a preliminary injunction apparently seeking to prevent substitution of BOR as the named defendant in this case. [Doc. 13].

8

claims are subject to dismissal because GGC simply is not a legal entity against which Plaintiff can maintain a lawsuit.  [Doc. 11 at 2].

For this reason, the court recommends that GGC be dismissed and that BOR be substituted as the named Defendant in this litigation.

**b.      Section 1983 Claims/Procedural Due Process**

Plaintiff also contends that, in handling the Title IX sexual harassment complaints against him and determining that he should be terminated, his procedural due process rights as established by the Fifth and Fourteenth Amendments were violated.  Initially, to the extent that Plaintiff seeks to invoke the due process clause of the Fifth Amendment, his cause of action should be dismissed.  "The fifth amendment to the United States Constitution restrains the federal government, and the fourteenth amendment, section 1, restrains the states, from depriving any person of life, liberty, or property without due process of law."  Buxton v. City of Plant City, Florida, 871 F.2d 1037, 1041 (11th Cir. 1989); and see Burrell v. County Government of Madison County, Alabama, 2016 WL 1086029, at *7 (N.D. Ala. March 21, 2016) ("The Fifth Amendment governs the conduct of federal actors, not state actors."); Tomberlin II v. Clark, 1 F. Supp. 3d 1213, 1229 (N.D. Ala. 2014) (finding that the plaintiff's due

process claim brought under the Fifth Amendment was "due to be dismissed because he has not alleged that any Defendant is a federal government actor").

Any Fifth Amendment due process claim should be dismissed with prejudice because Defendant is not a federal actor.  Plaintiff apparently misunderstands Defendant's argument on this point. [Doc. 10 at 4-5].  Defendant only seeks to dismiss the Fifth Amendment due process claim, not the Fourteenth Amendment due process claim, on the ground that Defendant is a State actor not a Federal actor.  The court agrees that the due process clause is applicable to state actors pursuant to the Fourteenth Amendment.  However, that being said, Plaintiff's Fourteenth Amendment procedural due process claim, as also argued by Defendant, is subject to dismissal on other grounds.

Section 1983 provides, in pertinent part: "Every person who, under color of any statute . . . of any State . . . subjects . . . any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law. . . ."  42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." <u>Baker v. McCollan</u>, 99 S. Ct. 2689, 2694 n.3 (1979).

10

In the present case, § 1983 is the vehicle by which Plaintiff would assert the alleged violation of his Fourteenth Amendment procedural due process rights.  See Afkhami v. Carnival Corp., 305 F. Supp. 2d 1308, 1328 (S.D. Fla. 2004) ("Section 1983 is a remedial statute that provides a civil cause of action when some elsewhere-defined substantive federal right has been violated."); Shows v. Morgan, 40 F. Supp. 2d 1345, 1355 (M.D. Ala. 1999) ("Section 1983 permits an individual to obtain legal redress for a violation of his constitutional rights by a state actor.  It is not, by itself, a source of substantive federal rights.").

To assert a claim based on § 1983, a "plaintiff must show (1) that a 'person' (2) acting 'under color of' some state law, custom, or practice (3) subjected [the plaintiff] (4) to the deprivation of rights, privileges, or immunities secured by the 'Constitution and laws' of the United States, and (5) that such conduct was the proximate cause of (6) plaintiff's damages or basis for equitable relief."  Greffey v. State of Alabama Dep't of Corrections, 996 F. Supp. 1368, 1377 (N.D. Ala. 1998); and see Dibbs v. Hillsborough County, Florida, 67 F. Supp. 3d 1340, 1353 (M.D. Fla. 2014) ("'A § 1983 claim alleging a denial of procedural due process requires proof of three elements: (1) deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally inadequate process.'") (citation omitted).  The first

AO 72A
(Rev.8/82)

issue that must be addressed is whether the party who allegedly deprived the plaintiff of federal rights is a "person" under § 1983. <u>Greffey</u>, 996 F. Supp. at 1377. As noted *supra*, Plaintiff asserts his § 1983 claims against BOR, on behalf of GGC, one of BOR's member institutions; BOR is an agency of the State of Georgia.[2] In <u>Will v. Michigan Dep't of State Police</u>, 109 S. Ct. 2304, 2312 (1989), the Supreme Court concluded, "We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."[3] The same is true with respect to a state agency like BOR and its member institutions, such as, GGC. <u>See</u> <u>Tindol v. Alabama Dep't of Revenue</u>, 632 Fed. Appx. 1000, 1001 (11th Cir. 2015) (in a case invoking § 1983 to bring procedural due process claims under the Fourteenth Amendment against a state agency, citing <u>Will</u>, the court held that a state and its agencies are not "persons" under

_____

[2]It would make no difference to this argument if GGC, also an agency of the State of Georgia, as part of the University System of Georgia, remained as the named defendant. <u>See</u> <u>Scully</u>, 332 Ga. App. at 873 n.1, 775 S.E.2d at 231 n.1.

[3]The issue of Eleventh Amendment immunity often comes into play with regard to § 1983 claims against a state, and it does in this case as well. <u>See</u> <u>Robinson v. Georgia Dep't of Transp.</u>, 966 F.2d 637 (11th Cir. 1992). However, the Supreme Court's decision in <u>Will</u> was not based on the Eleventh Amendment. "Instead, the Court looked to that Amendment 'as a relevant consideration. The primary focus of <u>Will</u> was, as it should have been, on the language and history of § 1983.'" <u>Greffey</u>, 996 F. Supp. at 1377 n.20 (quoting <u>Hilton v. South Carolina Pub. Ry. Comm'n</u>, 112 S. Ct. 560, 565 (1991)); <u>accord</u> <u>Florida Paraplegic Assoc. v. Martinez</u>, 734 F. Supp. 997, 1001-02 (S.D. Fla. 1990).

12

§ 1983); <u>Wessinger v. Board of Regents of the Univ. System of Georgia</u>, 2007 WL 1430388, at *1 (N.D. Ga. May 14, 2007) ("The Board of Regents is a state agency, not a 'person' for purposes of § 1983 . . . .").

Plaintiff's § 1983 procedural due process claim against Defendant is also barred by the Eleventh Amendment of the United States Constitution.  The Eleventh Amendment bars suits against a state or its agencies in federal court brought by its own citizens or by citizens of another state.  <u>See</u> <u>Kimel v. Florida Bd. of Regents</u>, 120 S. Ct. 631 (2000); <u>Hans v. Louisiana</u>, 10 S. Ct. 504 (1890); <u>DeKalb County School Dist. v. Schrenko</u>, 109 F.3d 680, 687 (11th Cir. 1997).  "As an arm of the state, the [BOR and its member institutions, such as GGC,] is entitled to the same sovereign immunity of the state itself."  <u>Stephens v. Georgia Dep't of Transportation</u>, 134 Fed. Appx. 320, 324 (11th Cir. 2005); <u>and see</u> <u>Williams v. Bd. of Regents of the Univ. System of Georgia</u>, 477 F.3d 1282, 1301 (11th Cir. 2007) (applying sovereign immunity to the BOR as an arm of the state).  A state or its agency, however, may be subject to federal jurisdiction in instances where the state has waived its Eleventh Amendment immunity and where Congress has made it "'unmistakably clear'" that it intends to "'abrogate the States' constitutionally secured immunity from suit in federal court . . . .'"  <u>Kimel</u>, 120 S. Ct. at 640 (quoting <u>Dellmuth v. Muth</u>, 109 S. Ct. 2397, 2400 (1989)).  However,

"Congress has not abrogated states' immunity from § 1983 suits[;] . . . [n]or has [GGC] or the [BOR] waived its Eleventh Amendment immunity." Williams, 477 F.3d at 1301-02.

Among other meritless arguments, Plaintiff contends that the Supreme Court in Ex parte Young, 28 S. Ct. 441 (1908), established an exception to the general rule of immunity. [Doc. 10 at 4-5]. However, Ex parte Young does not provide an exception under the facts of this case. As explained by the Supreme Court, the exception applies and "federal courts have 'found federal jurisdiction over a suit against a state official when that suit seeks *only prospective injunctive relief* in order to end a continuing violation of federal law.'" Tindol, 632 Fed. Appx. at 1002 (quoting Seminole Tribe of Florida v. Florida, 116 S. Ct. 1114, 1132 (1996)) (emphasis added). First, Plaintiff is not seeking any injunctive relief in this case against Defendant, and he is seeking monetary damages. [Complaint, Prayer for Relief]. Additionally, Plaintiff is seeking "redress for an alleged wrong that occurred in the past[;]" however, "'Ex parte Young has been applied in cases where a violation of federal law by a state official is *ongoing* as opposed to cases in which federal law has been violated at one time or over a period of time in the past.'" Fedorov v. Bd. of Regents for the University of Georgia, 194 F. Supp. 2d 1378, 1386 (S.D. Ga. 2002) (quoting Florida Ass'n of Rehab. v. Florida

14

Dep't of Health, 225 F.3d 1208, 1219 (11th Cir. 2000)) (emphasis added).  In this case,

Plaintiff Cooper is seeking redress for the handling of the Title IX complaint lodged

against him and the decision to terminate his employment all occurring in October

2015, events in the past.  [Complaint ¶ 14].  "Prospective relief is awarded to prevent

future harm. . . .  Simply because the remedy will occur in the future, does not

transform it into 'prospective' relief.  The term, 'prospective relief,' refers to the

ongoing or future threat of *harm*, not relief."  Id. at 1387 (citation omitted) (emphasis

in original).  The exception provided by Ex parte Young does not apply in this case.

For these reasons, Plaintiff's Fourteenth Amendment procedural due process

claim, brought via § 1983, should be dismissed with prejudice.

**c.    Title IX**

Plaintiff invokes both Title VII and Title IX to seek relief for the allegedly

discriminatory termination based on his gender.  [Complaint; Doc. 10 at 5].  Defendant

asserts that Title VII preempts Title IX when a plaintiff seeks redress for employment

discrimination.  [Doc. 8 at 8].  Noting that the Eleventh Circuit Court of Appeals has

not decided this issue, Plaintiff argues that other case law in this circuit supports

allowing his Title IX cause of action to continue.  [Doc. 10 at 5].  The court, however,

15

agrees with the courts holding that Title VII preempts Title IX relief under the facts of this case.

In <u>Lakoski v. James</u>, 66 F.3d 751(5th Cir. 1995), the Fifth Circuit Court of Appeals held "that Title VII provides the exclusive remedy for individuals alleging employment discrimination on the basis of sex in federally funded educational institutions." <u>Id.</u> at 753. The court stated that, "[g]iven the availability of a private remedy under Title VII for aggrieved employees," to allow relief under Title IX "would disrupt a carefully balanced remedial scheme for redressing employment discrimination by employers such as the University of Texas Medical Branch." <u>Id.</u> at 754. In <u>Torres v. School Dist. of Manatee County, Florida</u>, 2014 WL 4185364 (M.D. Fla. August 22, 2014), relying in part on <u>Lakoski</u>, the district court persuasively explained why Title VII preempts relief under Title IX for employment discrimination. <u>And see</u> <u>Blalock v. Dale County Bd. of Educ.</u>, 84 F. Supp. 2d 1291, 1298 (M.D. Ala. 1999) (same).

The <u>Torres</u> court began by stating, "There is no question that Title IX prohibits employment discrimination: 'employment discrimination comes within the prohibition of Title IX.'" <u>Torres</u>, 2014 WL 4185364, at *4 (quoting <u>North Haven Bd. of Educ. v. Bell</u>, 102 S. Ct. 1912, 1923 (1982)). However, the question before that court, and

16

before this court, "is whether teachers, such as [Plaintiff Cooper], have a private right of action for [discrimination] under Title IX when such teachers complain that they are the victims of sexual harassment" or other forms of discrimination based on gender. Id.; and see Morris v. Wallace Community College-Selma, 125 F. Supp. 2d 1315, 1343 (S.D. Ala. 2001) (same).  Noting that there is a split among the federal courts on the answer to that question and that the Eleventh Circuit Court of Appeals has not answered the question, the court held "that such a private right of action does not exist under Title IX because it is preempted by Title VII of the Civil Rights Act of 1964." Torres, 2014 WL 4185364, at **4-5 (providing citations to cases agreeing with preemption and finding no preemption).  The Torres court, as does this court, agreed with the Fifth Circuit Court of Appeal's statement that Congress did not intend to allow relief under Title IX to offer a bypass to the administrative exhaustion requirements established for relief under Title VII.  Id., at **5-6 (citing Lakoski, 66 F.3d at 753-54).  If Title VII is not the exclusive remedy, "'Title VII's technical and administrative requirements [would be eviscerated], thereby giving plaintiffs who work at federally funded educational institutions unfettered ability to bring what are in reality Title VII sexual discrimination claims without adhering to the same rules

17

required of every other employment discrimination plaintiff in the country.'" Id., at *6 (quoting Gibson v. Hickman, 2 F. Supp. 2d 1481, 1484 (M.D. Ga. 1998)).

The court in Torres also relied on the Supreme Court decision in Great American Federal Savings and Loan Ass'n v. Novotny, 99 S. Ct. 2345 (1979), which addressed "the interplay between Title VII and 42 U.S.C. § 1985" to reach its decision.[4]   2014 WL 4185364, at *6.  In Novotny, "the Court explained, 'If a violation of Title VII could be asserted through § 1985(3), a complainant could avoid most if not all of  the [ ] detailed and specific provisions of the law . . . [including] [t]he short and precise time limitations of Title VII [and] the administrative process, which plays a crucial role in the scheme established by Congress in Title VII.'"  Torres, 2014 WL 4185364, at *6 (quoting Novotny, 99 S. Ct. at 2350).  The court in Torres, which this court finds persuasive, applied the same rationale to hold that the plaintiff's Title IX claim was preempted by Title VII.  Id.

In this case, Plaintiff has satisfied the administrative exhaustion requirements of Title VII and can assert his discriminatory termination claim pursuant thereto. However, to the extent that he also seeks relief for the same allegedly discriminatory

_____

[4]The Supreme Court held "that deprivation of a right created by Title VII cannot be the basis for a cause of action under § 1985(3)."  99 S. Ct. at 2352.

18

conduct under Title IX, his claim is preempted. For this reason, the court recommends that Plaintiff's Title IX cause of action be dismissed with prejudice.

### d.    Title VII Discriminatory Termination Claim

Plaintiff Cooper alleges that Defendant violated Title VII by subjecting him to discrimination on the basis of his gender when it terminated his employment in October 2015. [Doc. 3]. Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Plaintiff may assert a case of gender discrimination by alleging facts showing that: (1) he is a member of a protected class; (2) he was subjected to an adverse employment action; (3) his employer treated similarly situated employees outside his protected class more favorably; and (4) he was qualified to do the job. See Burke-Fowler v. Orange County, Florida, 447 F.3d 1319, 1323 (11th Cir. 2006).[5]

_____

[5]However, courts should not apply the elements of a *prima facie* case in a rigid or mechanical way. See United States Postal Serv. Bd. of Gov. v. Aikens, 103 S. Ct. 1478, 1482 (1983) ("The *prima facie* case method established in McDonnell Douglas was never intended to be rigid, mechanized, or ritualistic.") (quoting Furnco Construction Corp. v. Waters, 98 S. Ct. 2943, 2949 (1978) (internal quotation marks omitted)); Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997) ("If a plaintiff fails to show the existence of a similarly situated employee, summary judgment is

19

Plaintiff has alleged facts to establish three of the four elements of a *prima facie* case, that is, he is a male, he was terminated and he was qualified for his job.  As Defendant points out, to establish the final *prima facie* element, Plaintiff must sufficiently allege that Defendant treated similarly situated female employees more favorably.  In <u>Jones v. Bessemer Carraway Med. Ctr.</u>, 137 F.3d 1306 (11th Cir.), <u>partial superseding opinion on denial of rehearing</u>, 151 F.3d 1321 (11th Cir. 1998), the Eleventh Circuit Court of Appeals emphasized that the proper comparison is to employees that are "'similarly situated in all relevant respects.'"  <u>Id.</u> at 1311 (quoting <u>Holifield</u>, 115 F.3d at 1562).  Specifically, the court wrote, "'[i]n determining whether employees are similarly situated for purposes of establishing a *prima facie* case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways.'"  <u>Id.</u> (quoting <u>Holifield</u>, 115 F.3d at 1562).  Plaintiff argues that his "methodology was misinterpreted and considered offensive[; while, o]n the other hand, female colleagues teaching the same course, did not face similar allegations considering the fact that we all have to teach the same topics."  [Doc. 10 at 6].  In the complaint, Plaintiff does reference that the same course is taught by female instructors using the same methodology without

_____

appropriate where no other evidence of discrimination is present.") (italics omitted).

complaint.  [Complaint ¶ 14].  However, this conclusory allegation is insufficient to state a claim that Defendant, having received complaints from students or otherwise being on notice, failed to discipline female instructors teaching Anatomy and Physiology courses using the same "<u>standardized</u> mnemonics."  Plaintiff's vague reference to female instructors does not sufficiently identify alleged comparators.

Plaintiff has otherwise failed to sufficiently plead other evidence of intentional discrimination based on his gender.  His assertion that he felt his treatment had to do with his sex because the investigation was handled by a female addressing complaints of sexual harassment by female students is insufficient to state a claim.  [Complaint ¶ 14].  And, although Plaintiff asserts that one of the female students who lodged a complaint against him claimed that she did not do so and was called before the Office of Diversity to verify her complaint, there is no allegation that she denied the allegation to the Office of Diversity such that Defendant would be aware of the denial.  Such knowledge might call into question the legitimate reason for Defendant's employment decision.

The court therefore recommends that Plaintiff's Title VII claim for discriminatory termination be dismissed without prejudice.

**e.     Leave to Amend**

Plaintiff, in response to the motion to dismiss, argues that if the court dismisses some of his claims, "it is only fair that [he] should be afforded the . . . opportunity to do an amendment . . . ." [Doc. 10 at 7].  In <u>Spear v. Nix</u>, 215 Fed. Appx. 896 (11th Cir. 2007), the Eleventh Circuit concluded that when a plaintiff is proceeding *pro se* and "'[w]here a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice.'"  <u>Id.</u> at 902 (citation omitted); <u>accord</u> <u>Case v. Riley</u>, 270 Fed. Appx. 908, 910-11 (11th Cir. 2008); <u>Canty v. Fry's Electronics, Inc.</u>, 736 F. Supp. 2d 1352, 1363 (N.D. Ga. 2010); <u>and see</u> <u>Friedlander v. Nims</u>, 755 F.2d 810, 813 (11th Cir. 1985) (ordinarily, "a district court should give a plaintiff an opportunity to amend his complaint rather than dismiss it when it appears that a more carefully drafted complaint might state a claim upon which relief could be granted").  Even if a *pro se* plaintiff does not request the opportunity to amend prior to dismissal, the court should provide that opportunity - if an amended complaint might state a claim.  <u>See</u> <u>Jackson v. Vaughan Regional Medical Center</u>, 2009 WL 3242082, at *3 (S.D. Ala. October 6, 2009) ("courts have continued to provide an opportunity for *pro se* plaintiffs such as Jackson to correct pleading deficiencies via amendment even where no request for

22

leave to amend has been made, so long as 'a more carefully drafted complaint might state a claim'") (quoting <u>Bank v. Pitt</u>, 928 F.2d 1108, 1112 (11th Cir. 1991)); <u>and see</u> <u>Bryant v. Dupree</u>, 252 F.3d 1161, 1163 (11th Cir. 2001) ("Generally, [w]here a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice.") (citation and internal quotation marks omitted).

In the present case, the court cannot determine that, if the proper legal entity, BOR, were named as a defendant, Plaintiff could not draft a complaint stating a Title VII cause of action for discriminatory termination based on his gender. However, this leave to amend is recommended to extend only to the Title VII claim as the court recommends that the remaining claims be dismissed with prejudice. Therefore, the undersigned finds that Plaintiff should be afforded the opportunity to file an amended complaint in order to name the proper entity as a defendant and to allege facts stating a claim for Title VII relief.

If the district court adopts the undersigned's recommendation and grants Plaintiff leave to file an amended complaint against Defendant BOR and Plaintiff fails to do so against the substituted Defendant within the time prescribed by the court, it is recommended that this action be dismissed with prejudice at that time. <u>See</u>

23

Duckworth v. Symon Says Enterprises, Inc., 2014 WL 495389, at *4 (M.D. Fla. February 6, 2014) (granting the defendant's Rule 12(b)(6) motion to dismiss and dismissing the plaintiff's claims, including her FMLA claim, without prejudice with leave to file an amended complaint within two weeks); Buckley v. Bayrock Mortg. Corp., 2010 WL 476673, at **9-10 (N.D. Ga. February 5, 2010) (granting defendant's Rule 12(b)(6) motion and dismissing plaintiff's complaint without prejudice with leave to file a properly amended complaint and holding that if plaintiff failed to file such a complaint, the court would dismiss the action with prejudice); Taylor v. Alvarez, 2008 WL 1840719, at *5 (S.D. Fla. April 21, 2008) (dismissing plaintiff's complaint without prejudice on defendants' motion to dismiss, giving plaintiff approximately three weeks to file an amended complaint, and holding that if plaintiff failed to do so, the court would dismiss the case with prejudice); Holmes v. City of East Point, 2005 WL 3478375, at *5 (N.D. Ga. December 20, 2005) (dismissing plaintiff's claims without prejudice and, although not obligated to do so, *sua sponte* permitting plaintiff to file an amended complaint within thirty days and holding that if plaintiff failed to do so, the court would dismiss plaintiff's claims with prejudice).

24

## IV.    Conclusion

Based on the foregoing reasons and cited authority, the court **RECOMMENDS** that Defendant's motion [Doc. 8] to dismiss be **GRANTED** and that GGC be dismissed as a defendant in this action.  The court further **RECOMMENDS** that Plaintiff's claims for relief under the procedural due process clauses of the Fifth and Fourteenth Amendments and pursuant to Title IX be **DISMISSED WITH PREJUDICE** and that his claim for relief under Title VII for discriminatory termination be **DISMISSED WITHOUT PREJUDICE** with leave for Plaintiff to file an amended complaint.   Should the district court adopt this report and recommendation, it is **RECOMMENDED** that Plaintiff be given leave to file an amended complaint, naming BOR as Defendant and asserting a claim under Title VII within twenty-one (21) days of the district court's order.  If Plaintiff fails to file an amended complaint by that time following the directions of the court, the undersigned **RECOMMENDS** that the Title VII cause of action then be dismissed with prejudice.[6]

---

[6]If the district court allows for Plaintiff to file an amended complaint, the Clerk of Court should be directed to send to Plaintiff a *Pro Se* Employment Discrimination Complaint Form for use in filing the amended complaint.

AO 72A

(Rev.8/82)

**SO RECOMMENDED** this 16th day of September, 2016.

JANET F. KING
UNITED STATES MAGISTRATE JUDGE

26